UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DOUGLAS JUNIO ALMEIDA DE SOUZA, | * * * * | |
| Petitioner, | * * | |
| v. | * * | |
| ANTONE MONIZ, *Superintendent, Plymouth County Correctional Facility*; PATRICIA HYDE, *Boston Field Office Director, U.S. Immigration and Customs Enforcement and Removal Operations*; TODD LYONS, *Acting Director, U.S. Immigration and Customs Enforcement*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and PAMELA BONDI, *Attorney General of the United States*, | * * * * * * * * * * * * * * | Civil Action No. 25-cv-12509 |
| Respondents. | * * | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is a habeas action brought pursuant to 28 U.S.C. § 2241 by Petitioner Douglas Junio Almeida De Souza, a citizen of Brazil. More than one month ago, an immigration judge ordered Petitioner's release on bond—yet the Department of Homeland Security ("DHS") continues to detain Petitioner in the custody of Immigrations and Customs Enforcement ("ICE")[1]

---

[1] In their filings, Respondents refer to ICE and DHS interchangeably. Compare [ECF No. 15 at 3 ("[O]n or about September 30, 2025, 'ICE filed [a] notice of appeal . . . .'" (quoting [ECF No.

pursuant to a regulation that permits DHS to unilaterally stay an immigration judge's bond decision by filing a notice of intent to appeal. Petitioner challenges the lawfulness of his ongoing detention. For the reasons elaborated below, Petitioner's habeas corpus petition is **<u>GRANTED</u>**.

I.   FACTS

Petitioner is a citizen of Brazil. [ECF No. 6 ¶ 3]; [ECF No. 15-1 ¶ 6]. In 2019, he entered the United States, [ECF No. 6 ¶ 3]; [ECF No. 15-1 ¶ 7], was taken into custody by Customs and Border Protection, [ECF No. 15-1 ¶ 7], and then was released on his own recognizance, [ECF No. 15-1 ¶ 8]. Petitioner was later granted special immigrant juvenile status, [ECF No. 6 ¶ 3], and the removal proceedings against him were terminated in 2022, [ECF No. 6 ¶ 3]; [ECF No. 15-1 ¶ 10]. On September 9, 2025, ICE officers arrested Petitioner again and placed him in custody. [ECF No. 15-1 ¶¶ 11–12]. Petitioner filed this habeas petition the same day, [ECF No. 1], and the Court ordered Respondents to respond by September 24, [ECF No. 3].

On September 15, however, Petitioner filed a motion in immigration court, requesting a custody redetermination hearing, [ECF No. 15-1 ¶ 15], and on September 22, an immigration judge ruled that Petitioner was entitled to release on bond, [ECF No. 10 at 1–2]; [ECF No. 15-1 ¶ 16]. The next day, while Petitioner was still detained, DHS filed a notice of intent to appeal, <u>see</u> [ECF No. 15-1 ¶ 17], and invoked 8 C.F.R. § 1003.19(i)(2), the "automatic stay regulation," which provides that if DHS "determine[s] that an alien should not be released," it need only file a notice of intent to appeal, at which point "any order of the immigration judge authorizing release

---

15-1 ¶ 18]))], <u>with</u> [<u>id.</u> at 6 ("DHS filed its notice of appeal on September 30, 2025")]. Accordingly, the Court generally adheres to the terminology used by Respondents when describing a particular fact or action.

(on bond or otherwise) shall be stayed." Pursuant to the automatic stay regulation, Petitioner was not released on bond. [ECF No. 10 at 2]; [ECF No. 15-1 ¶ 19].

The following day, September 23, Petitioner filed a status update in this action, advising the Court that he was being detained despite the immigration judge's bond ruling and requesting release on the basis that the automatic stay regulation as applied to his case violated the Due Process Clause. See generally [ECF No. 10]. Later that day, Respondents requested an extension of time to respond, noting that the automatic stay would lapse, and Petitioner would be released, unless ICE perfected its appeal by filing a notice of appeal with the Board of Immigration Appeals by October 6, 2025. [ECF No. 12 ¶ 5–6]; see 8 C.F.R. § 1003.6(c)(1). They argued that an extension of time would "conserve the resources of the parties and the Court to the extent ICE does not perfect its appeal." [ECF No. 12 ¶ 7]. The Court granted the motion, thereby delaying consideration of this petition. [ECF No. 13]. Yet contrary to Respondents' suggestion that ICE might not perfect the appeal, ICE did, in fact, perfect its appeal on September 30, 2025, [ECF No. 15-1 ¶ 18], and Respondents filed their opposition to the petition nine days later, [ECF No. 15]. Petitioner will remain in custody until December 29, 2025, and he could be detained longer pursuant to several extension provisions. [ECF No. 15 at 7 (citing 8 C.F.R. § 1003.6(d))].

## II.    DISCUSSION

Despite an immigration judge's order that Petitioner be released on bond, he remains detained at the discretion of the Executive. See Hamdi v. Rumsfeld, 542 U.S. 507, 554–55 (2004) (Scalia, J., dissenting) ("The very core of liberty secured by our Anglo-Saxon system of separated powers has been freedom from indefinite imprisonment at the will of the Executive."). Petitioner asserts that this ongoing deprivation of liberty violates the Due Process Clause of the

3

Fifth Amendment. [ECF No. 10 at 2]. Respondents reply that Petitioner's continued detention is constitutional, either because the Constitution does not permit Petitioner to raise a due process challenge or, in the alternative, because Petitioner has received due process. [ECF No. 15 at 7–11].

In support of their position, Respondents first aver, relying on a series of cases collected by another session of this Court in Benito Vasquez v. Moniz, No. 25-cv-11737, 2025 WL 1737216, at *1 (D. Mass. June 23, 2025), that, as an immigration detainee, Petitioner is only entitled to "those rights provided by statute and regulations thereunder." [ECF No. 15 at 7 (quoting Benito Vasquez, 2025 WL 1737216, at *1)]. Those cases, and the legal principles for which they stand, do not apply here, because each of them concerns individuals detained as they arrived in the United States, not individuals, like Petitioner, detained in the interior sometime after arrival. See Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law . . . [b]ut an alien on the threshold of initial entry stands on a different footing . . . ."); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020) ("While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that . . . an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause [than those provided by Congress]."); Amanullah v. Nelson,

811 F.2d 1, 3 (1st Cir. 1987) (noting that each of the petitioners had been detained immediately upon arrival in the United States).[2]

As a constitutional matter, Petitioner has clearly crossed the "threshold of initial entry," Thuraissigiam, 591 U.S. at 107. He has resided in the United States for the last six years and has already been subject to proceedings before an immigration judge, which were "terminated . . . to allow the Petitioner to pursue . . . Form I-360 relief with CIS." [ECF No. 15-1 ¶ 10]. Respondents do not identify any authority which persuades the Court that, despite these facts, Petitioner should be treated as an individual at the threshold of initial entry. Accordingly, Petitioner has procedural rights under the Fifth Amendment's Due Process Clause that are independent of those established by Congress and the Executive Branch for regulation of border arrivals. Cf. Mathews v. Diaz, 426 U.S. 67, 77 (1976) ("There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law. . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." (citing, inter alia, Wong Yang Sung v. McGrath, 339 U.S. 33, 48–51 (1950))).

---

[2] The statutes governing detention and removal of noncitizens make a similar distinction: 8 U.S.C. § 1225 applies at "the [n]ation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible," Jennings v. Rodriguez, 583 U.S. 281, 287 (2018), while "once inside the United States," individuals are governed by 18 U.S.C. § 1226, id. at 288. See id. at 289 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." (emphasis added)). The Court agrees with the immigration judge's conclusion, [ECF No. 15-1 ¶ 16], that, for statutory purposes, Petitioner's detention is governed by § 1226. See, e.g., Duarte Rocha v. Hyde, No. 25-cv-12584, 2025 WL 2807692, at *2 (D. Mass. Oct. 2, 2025).

Respondents next argue that Petitioner's continued detention does not violate his procedural due process rights. The parties agree that Mathews v. Eldridge, 424 U.S. 319 (1976), supplies the relevant test. [ECF No. 10 at 2]; [ECF No. 15 at 7–8]; see also Hernandez-Lara v. Lyons, 10 F.4th 19, 27–28 (1st Cir. 2021) (applying Mathews to a similar procedural due process challenge); Sampiao v. Hyde, No. 25-cv-11981, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025) (holding under Mathews framework that continued immigration detention after bail order violates the constitutional guarantee of procedural due process). Under Mathews, the Court must balance "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" Hernandez-Lara, 10 F.4th at 28 (quoting Mathews, 424 U.S. at 335).

Respondents concede—as they must—that "the 'private interest' inherent in Petitioner's detention is . . . serious." [ECF No. 15 at 8]. "Serious," however, does not quite capture the weight of petitioner's interest. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause . . . ." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citing Youngberg v. Romeo, 457 U.S. 307, 316 (1982)). The Court will not "downplay th[e] deprivation" inherent in physical detention, Hernandez-Lara, 10 F.4th at 28, nor "'minimize the importance and fundamental nature' of the individual's right to liberty," Foucha, 504 U.S. at 80 (quoting United States v. Salerno, 481 U.S. 739, 750 (1987)). By the time Respondents in this action filed their opposition to Petitioner's habeas petition on October 9, 2025, [ECF No. 15], Petitioner had been detained for more than two weeks after an immigration judge ruled that he

6

was entitled to be released from detention on bond, [ECF No. 15-1 ¶ 16], and he will remain in custody until at least the end of December 2025, [ECF No. 15 at 7].  Thus, Petitioner's private interest is strong and indisputable.

The second factor considers the risk of erroneous deprivation under the process applied to Petitioner.  Because an immigration judge had already granted Petitioner's release (assuming he posted the requisite bond), Petitioner is effectively being deprived of his freedom solely as a result of DHS counsel's discretionary decision pursuant to the automatic stay regulation.  Under these circumstances, in which an agency is permitted to unilaterally stay the decision of a judge that has ruled against it, the risk of erroneous deprivation is high.  See Sampiao, 2025 WL 2607924, at *11–12; cf., e.g., Butz v. Economou, 438 U.S. 478, 515–16 (1978) (noting, in administrative law context, that the defendants in enforcement proceedings are entitled to "present . . . evidence to an impartial trier of fact and obtain an independent judgment as to whether the [agency decision to proceed with the case] is justified").  Immigration judges, like other judicial officers, have a "responsibility to function as neutral and impartial arbiters" and "must assiduously refrain from becoming advocates for either party." Aguilar-Solis v. I.N.S., 168 F.3d 565, 569 (1st Cir. 1999).  By contrast, legal officials within the Department of Homeland Security are expected to advance the agency's priorities, which are ultimately the Executive's priorities, see, e.g., Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 12 (2020) ("[F]ollowing a change in Presidential administrations, DHS rescinded . . . [a deferred-enforcement] [m]emorandum . . . [,] cit[ing] . . . the new administration's immigration enforcement priorities."); cf. Model Rules of Pro. Conduct r. 1.2(a) (A.B.A. 1983) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation.").  The risk of erroneous deprivation pursuant to this procedure is particularly high under the current

7

Administration, which has charged DHS with "ensur[ing] the detention of aliens apprehended for violations of immigration law," Exec. Order. No. 14,159, 90 Fed. Reg. 8443, 8444 (Jan. 20, 2025) (emphasis added).

Respondents contend that the risk of an erroneous deprivation is low because a "senior legal official" from DHS must sign off on the appeal. [ECF No. 15 at 8 (citing 8 C.F.R. § 1003.6(c)(1))]. In fact, this internal DHS sign-off was the only process that occurred before Petitioner was deprived of his liberty. Such review—ex parte by a senior legal official within the agency responsible for Petitioner's detention—is "cold comfort to an individual in [Petitioner]'s shoes," Sampiao, 2025 WL 2607924, at *11, and Respondents fail to provide any procedural or factual basis for the Court to conclude that it meaningfully diminishes the risk of erroneous deprivation. As for other procedural safeguards, Respondents direct the Court to 8 C.F.R. § 1003.6(c). Although this subsection does provide a timeline for the adjudication of appeals, it does not prevent the deprivation of liberty at issue here, that is, the deprivation of Petitioner's right to be released on bond while his appeal is pending. Further, the timeline provided for review, which allows at least ninety days, with the possibility of an extension at the government's request, 8 C.F.R. § 1003.6(c)(5), virtually ensures a lengthy custodial detention before any relief will be granted.

What remains to be considered is the government interest. The government suggests that without application of the automatic stay regulation, suspects "might post bond and flee." [ECF No. 15 at 9 (quoting Altayar v. Lynch, No. 16-cv-02479, 2016 WL 7383340, at *4 (D. Ariz. Nov. 23, 2016))]. That risk, however, is not compelling here, because an immigration judge has already decided, after considering the evidence, that Petitioner is not a flight risk. See [ECF No. 15-1 ¶ 16]; Hernandez-Lara, 10 F.4th at 40 (holding that in immigration bond hearings, the

government only needs to meet a preponderance-of-the-evidence standard to show that a detainee is a flight risk). Respondents also defend the automatic stay regulation as a valid exercise of the Attorney General's authority to prescribe differentiated roles for DHS employees and immigration judges, as well as a process by which they interact, [ECF No. 15 at 8–9 (citing Hussain v. Gonzales, 492 F. Supp. 2d 1024, 1032 (E.D. Wis. 2007))].

On balance, the process by which Petitioner was deprived of his liberty in this case was constitutionally deficient. DHS counsel—charged with detaining and removing people like Petitioner—substituted its judgment for that of an immigration judge who had ordered Petitioner's release on bond. As a result of that discretionary decision, without any opportunity to be heard, Petitioner remains in detention. The fact that the decision to invoke the regulation was taken and approved by agency counsel with enforcement responsibilities undermines any idea that Petitioner enjoyed a neutral process. The Attorney General's authority to regulate immigration does not justify depriving Petitioner of his liberty without constitutionally adequate process. It may well be expedient, from the perspective of immigration enforcement, to condition the implementation of immigration judges' bond decisions on DHS approval, but as the Supreme Court explained forty years ago:

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. . . . [These rights] cannot be defined by the procedures provided for [their] deprivation . . . . [O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.' The answer to that question is not to be found in [statutes or regulation].

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (citation omitted) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Here, Petitioner was entitled to more process than a discretionary decision by counsel and review by senior counsel within DHS prior to being deprived of the release on bond that was

9

allowed by an immigration judge. The automatic stay provision as applied to Petitioner thus violated the Due Process Clause. Having so held, the Court need not reach the substantive due process and ultra vires arguments advanced by the parties.

### III.     CONCLUSION

Respondents are hereby **ORDERED** to release Petitioner upon the posting of the ordered bond in accordance with the September 22, 2025, decision of the immigration court. Respondents are further **ORDERED** to file a status report within three days of this order confirming that Petitioner has been released from custody.

**SO ORDERED.**

November 6, 2025                                        /s/ *Allison D. Burroughs*
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE